459 So.2d 60 (1984)
KAUFMAN & ENZER JOINT VENTURE, Plaintiff-Appellant,
v.
BETHLAN PRODUCTION CORPORATION, Defendant-Appellee.
No. 16464-CA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1984.
Rehearing Denied November 29, 1984.
*61 Hudson, Potts & Bernstein by James A. Rountree, Monroe, for plaintiff-appellant.
Charles R. Blaylock, Monroe, for defendant-appellee.
Before PRICE, MARVIN and SEXTON, JJ.
SEXTON, Judge.
Plaintiff filed suit to place defendant corporation in receivership. The trial court sustained defendant's peremptory exception of no cause of action, and dismissed plaintiff's claim. We reverse.
Plaintiff in this cause is Kaufman & Enzer Joint Venture, a California general partnership (hereinafter referred to as Kaufman). Defendant herein is Bethlan Production Corporation, a Louisiana corporation domiciled in Ouachita Parish (hereinafter referred to as Bethlan Corporation). Bethlan Corporation is a general partner, and Kaufman is a limited partner in a partnership named Bethlan Production 1981-C, LTD. (hereinafter referred to as Production, LTD.)
The plaintiff Kaufman filed suit against defendant Bethlan Corporation on October 11, 1983, seeking to have that corporation placed in a receivership. Plaintiff's petition alleged in general terms that plaintiff was a creditor of defendant Bethlan Corp., and that Bethlan Corp. was wasting, misusing or misapplying its corporate assets.
Plaintiff alleged, more particularly, that it had purchased a limited partnership interest in Production, LTD. for $423,309.38. Plaintiff alleged that Bethlan Corporation assigned some twenty oil wells owned by it to part-owner and corporate Vice-President, James S. Kyser, III. Plaintiff alleged that this assignment to Kyser was a sham *62 transaction executed for the purpose of disposing of Bethlan's corporate assets to the prejudice of creditors. Plaintiff alleged that the defendant corporation executed a $400,000 mortgage on ten oil wells "in an attempt to defraud [its] creditors."
Plaintiff alleged that the defendant-corporation, Bethlan, as the general managing partner of Production, LTD. had misappropriated and converted to its own use partnership income due plaintiff as a limited partner under the false pretense of discharging operational expenses. Plaintiff alleged, in specific terms, that defendant has deducted operational expenses owed to Sterlington Oil and Gas Supply, Inc. from plaintiff's partnership income under the guise of discharging business debts, without ever having actually paid these operational expenses and debts to Sterlington. Plaintiff also alleged that Sterlington has filed two suits against the defendant to recover these sums.
Plaintiff has moreover alleged that the defendant corporation has not paid plaintiff the partnership income due it for several months, "diverting such sums to its own benefit or to the personal benefit of the principals of the corporation."
Plaintiff attached to its petition a document dated July 8, 1983, and styled "Outline of Settlement Agreement." This document expressed the agreement of defendant Bethlan Production and Production, LTD., to repurchase or "buy out" plaintiff's interest in Production, LTD. Partnership for a sum of $444,465.36. This agreement thus signifies that defendant corporation is at least jointly liable to plaintiff Kaufman for the $444,465.36 sum.
Defendant filed a peremptory exception of no cause of action to plaintiff's petition. On December 20, 1983, the trial court sustained defendant's exception of no cause of action and dismissed plaintiff's suit.
The peremptory exception of no cause of action is properly triable on the face of plaintiff's petition and compels the court to gauge the legal sufficiency of complainant's petition. In determining whether a plaintiff's petition has stated a cause of action, the court must presume the truth of plaintiff's allegations and apply the pertinent substantive law to the facts alleged. The peremptory exception of no cause of action is appropriately sustained only when, assuming plaintiff's allegations to be true, plaintiff has not stated a claim for which he can receive legal remedy under the applicable substantive law. Any reasonable doubt as to the sufficiency of the petition must be resolved in favor of a finding that plaintiff's petition has stated a cause of action. LSA-C.C.P. Art. 927. Scariano Bros., Inc. v. Hammond Construction, 428 So.2d 564 (La.App. 4th Cir. 1983); Smith v. Livingston Parish Police Jury, 423 So.2d 5 (La.App. 1st Cir.1982); Frain as Tutrix of Beason v. State Farm Insurance Co., 421 So.2d 1169 (La.App. 2d Cir.1982); Godwin v. East Baton Rouge Parish, 372 So.2d 1060, (La.App. 1st Cir. 1979), writ denied 373 So.2d 527 (La.1979); Langley v. Copolymer Rubber and Chemical Corp., 233 So.2d 353 (La.App. 1st Cir. 1970). Documents and exhibits attached to plaintiff's petition must be considered in evaluating whether plaintiff has stated a cause of action, and the contents of such addenda must also be accepted as true. Godwin, supra; Guillory v. Nicklos Oil and Gas Co., 315 So.2d 878 (La.App. 3d Cir.1975); Clark v. Reed, 122 So.2d 344 (La.App. 2d Cir.1960).
The effect of the appointment of a receiver is to wrest the administration of a corporation's assets and affairs from its officers, and vest a qualified title in the corporation's property to a court-appointed officer who is empowered to administer the corporation's affairs in a manner designed to safeguard the interests of the corporation's creditors, debtors and stockholders. Reynaud v. Uncle Sam Planting & Mfg. Co., 152 La. 811, 94 So. 405 (1922); J.B. Beaird Corp. v. Johnson, 152 So. 789 (La. App. 2d Cir.1934).
LSA-R.S. 12:151(A) sets forth numerous grounds for the judicial appointment of a receiver to assume the administration of a *63 corporation's affairs.[1] However, the only statutory basis for a corporate receivership which is germane to this appeal is contained in Subsection 151(A)(1). This subsection states that:
A. The court may, after trial, appoint a receiver to take charge of the corporation's property when it is made to appear, in a proceeding instituted against the corporation:
(1) By any shareholder or creditor, that the directors or officers of the corporation are jeopardizing the rights of its shareholders or creditors by grossly mismanaging the business, or by committing gross and persistent ultra vires acts, or by wasting, misusing or misapplying the assets of the corporation.
The prerequisites to corporate receivership stipulated by Subsection 151(A)(1) may be broken down into two functional components. This section first requires the complainant's status: the petitioner must be a shareholder or creditor of the corporation. This section secondly requires the requisite content and tenor of the respondent-corporation's acts: gross mismanagement, persistent and flagrant illegality, or the wasteful dissipation of corporate assets.
It is clear in the first instance that, assuming the truth of the petition's allegations, the instant plaintiff is a creditor of the defendant corporation and thus possesses the requisite status delineated by Section 151(A)(1). A "creditor" is defined by Civil Code Article 2132 in the following terms: "[H]e to whom the obligation [to do, or not to do, or to give] is made is ... called the obligee or the creditor." "Creditor" is similarly defined by Civil Code Article 3556(20) as "the person in favor of whom some obligation is contracted, whether such obligation be to pay a sum of money, or to do or not to do something."
Plaintiff's status as a creditor of the defendant corporation derives in part from the settlement agreement, attached to plaintiff's petition. This contractual act apparently acknowledges and establishes defendant's obligation to pay plaintiff in an amount exceeding $400,000, and documents plaintiff's status as a creditor "in favor of whom some obligation [has been] contracted." LSA-C.C. Art. 3556(20). Plaintiff's creditor status may also be conceptually predicated upon the defendant-corporation's misappropriation and arrogation of partnership revenues to which plaintiff was legally entitled. The defendant-corporation is liable to the plaintiff as its business partner for any profits the defendant has accumulated through the breach of its fiduciary duty to its partners. LSA-C.C. Art. 2809. Thus, the plaintiff is the creditor or obligee of the defendant's obligation to compensate the breach of the defendant's fiduciary duty as a partner. The plaintiff is for identical reasons a creditor of the *64 defendant for the past business revenues owed it.
Having established that plaintiff is a creditor of the defendant-corporation, it is next necessary to ascertain whether, under plaintiff's allegations, the defendant has committed sufficiently egregious acts to justify a corporate receivership, whether through gross mismanagement, illegal acts, or the waste of corporate assets. The principal factual assertion, in the context of defendant's actions, is that defendant transferred or assigned some twenty oil wells to corporate officer/part owner, John Kyser, for the express purpose of frustrating creditors' claims. Plaintiff's petition is not specific on this point, but indulging every reasonable factual hypothesis in petitioner's favor as the law instructs us to do,[2] we assume that these transfers were uncompensated, or at least under-compensated. We conclude that, because of their apparent size and extent, these assignments manifest the waste, dissipation and misuse of corporate assets and gross mismanagement.
A similar factual scenario arose in Carmouche v. Sylvester House Moving, Inc., 244 So.2d 361 (La.App. 3d Cir.1971), in which a defendant-corporation divested itself of its physical assets in favor of the son of a corporate insider in order to "avoid payment of the ... indebtedness to plaintiffs, and thus to defraud them." 244 So.2d at 368. The Third Circuit therein held that a creditor may rightfully seek to have a debtor-corporation placed in receivership, where that corporation is dissipating its physical assets for the purpose of frustrating creditors' claims. As the courts of this state have consistently maintained, the appointment of a corporate receivership is proper where a complainant's rights are placed in imminent danger by fraudulent practices which dissipate corporate assets. Kerlin v. Bryceland Lumber Co., 134 La. 463, 64 So. 289 (1914); Fincher v. Claiborne Butane Co., Inc., 349 So.2d 1014 (La.App. 2d Cir.1977); West v. Certified Credit Corporation, 162 So.2d 589 (La.App. 2d Cir.1964).
Thus, plaintiff has alleged with sufficient specificity that it is a creditor of the defendant-corporation, and that defendant is committing acts of wasteful dissipation or gross mismanagement. We hold that, on the strength of plaintiff's allegations, the petitioner is entitled to its day in court.
The judgment of the trial court sustaining the peremptory exception of no cause of action is accordingly reversed, and this cause is remanded to the trial court for further proceedings not inconsistent herewith. The costs of this appeal are assessed to defendants.
REVERSED and REMANDED.
NOTES
[1] LSA-R.S. 12:151(A) reads as follows:

§ 151. Appointment of receiver
A. The court may, after trial, appoint a receiver to take charge of the corporation's property when it is made to appear, in a proceeding instituted against the corporation:
(1) By any shareholder or creditor, that the directors or officers of the corporation are jeopardizing the rights of its shareholders or creditors by grossly mismanaging the business, or by committing gross and persistent ultra vires acts, or by wasting, misusing or misapplying the assets of the corporation; or
(2) By any shareholder or creditor, that the corporation's property has been abandoned, or that, by failure of the shareholders to elect directors, or the failure of the directors or officers to serve, there is no one authorized to take charge of or conduct its affairs; or
(3) By any creditor, that the corporation is insolvent, or such creditor's claim has been reduced to judgment, on which execution has been issued and returned "nulla bona"; or
(4) By any creditor, that property of the corporation has been seized under judicial process by fraud or collusion between the corporation, its directors, officers or shareholders, and any creditor; or
(5) By any shareholder, that a majority of the shareholders are violating the rights of minority shareholders and endangering their interests; or
(6) By a shareholder or shareholders, severally or jointly, who have been registered owners for a period of not less than six months of not less than twenty per cent of the entire outstanding shares of the corporation, that either of the grounds for involuntary dissolution set forth in R.S. 12:143(A)(4) and (5) exists.
[2] See, e.g., Blanchard v. Employers Liability Assurance Corp., 197 So.2d 386 (La.App.2d Cir.1967); Stanley v. Missouri Pacific Railroad Co., 179 So.2d 490 (La.App. 3d Cir.1965).